IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| Wilmington Trust, N.A., as Trustee for the benefit of the registered holders of UBS Commercial Mortgage Trust 2017-C1, Commercial Mortgage Pass-Through Certificates, Series 2017-C1,<br><br>        Plaintiff,<br>  v.<br><br>Chetankumar D. Patel and Sunitabahen N. Patel,<br><br>        Defendants. | Case No. |

**COMPLAINT FOR BREACH OF CONTRACT**

Wilmington Trust, N.A., as Trustee for the benefit of the registered holders of UBS Commercial Mortgage Trust 2017-C1, Commercial Mortgage Pass-Through Certificates, Series 2017-C1 ("Plaintiff"), acting by and through its special servicer, CWCapital Asset Management LLC ("CWCapital"), and through its undersigned counsel, for its complaint against Chetankumar D. Patel and Sunitabahen N. Patel (together, "Defendants"), alleges as follows:

**The Parties**

1. Plaintiff is a national association and is the indemnitee under the Guaranty (as hereinafter described). Plaintiff's main office, as set forth in its articles of association, is located in Wilmington, Delaware. Plaintiff is a citizen of Delaware.

2. CWCapital is the special servicer for Plaintiff for the Loan (as hereinafter described) and, as such, has the power and authority to administer the Loan on behalf of Plaintiff.

3. Chetankumar D. Patel is an individual residing at 2501 Waterstone Lane, Rockwall, TX 75032. Chetankumar D. Patel executed the Guaranty for the benefit of Plaintiff and its

predecessor in interest.

4. Sunitabahen N. Patel is an individual residing at 1604 Highway 34 South, Terrell, TX 75160. Sunitabahen N. Patel executed the Guaranty for the benefit of Plaintiff and its predecessor in interest.

## Jurisdiction and Venue

5. The Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

6. Venue is proper in the United States District Court for the District of Texas pursuant to 28 U.S.C. § 1391 because each Defendant is a resident of Texas and lives within the Northern District of Texas.

## COUNT I
## BREACH OF CONTRACT — GUARANTY

**A.  The Loan Documents**

7. On April 12, 2017, Natixis Real Estate Capital LLC ("Original Lender"), Plaintiff's predecessor-in-interest, made a loan in the original principal amount of $5,500,000 (the "Loan") to Ashiyana Hospitality, LLC ("Borrower"), as evidenced by that certain Promissory Note dated April 12, 2017, in the original principal amount of $5,500,000 (the "Note").

8. A true and correct copy of the original Note with allonge affixed thereto is attached as Exhibit A and is incorporated herein by reference.

9. The Loan is also evidenced by that certain Loan Agreement dated as of April 12, 2017 (the "Loan Agreement").

10. A true and correct copy of the original Loan Agreement is attached as Exhibit B and is incorporated herein by reference.

11. The Loan was guaranteed by Defendants pursuant to that certain Guaranty of Recourse Obligations dated as of April 12, 2017 (the "Guaranty").

12. A true and correct copy of the original Guaranty is attached as <u>Exhibit C</u> and is incorporated herein by reference.

13. Pursuant to the terms of the Note and Loan Agreement, Borrower, *inter alia*, agreed to pay to Original Lender the principal sum of $5,500,000 plus interest thereon in monthly installments at the rates set forth therein through the initial maturity date of May 5, 2027, at which time all amounts due under the Note and related loan documents would become immediately due and payable.

14. Borrower pledged certain improved real property and personal property known as the Comfort Inn Cleveland Airport hotel located at 17550 Rosbough Drive, Middleburg Heights, OH 44130, and the revenue generated therefrom (collectively, the "Hotel") to Original Lender as security for the Loan, as evidenced by that certain Open-End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Mortgage"), executed, acknowledged and delivered by Borrower, as mortgagor, to Original Lender, as mortgagee, which was dated as of April 12, 2017, and recorded in the Cuyahoga County Office of Fiscal Officer on April 12, 2017, as document number 201704120567.

15. A true and correct copy of the original recorded Mortgage is attached as <u>Exhibit D</u> and is incorporated herein by reference.

16. The pledge of the Hotel to Original Lender as security for the Loan was also evidenced by that certain Assignment of Leases and Rents (the "ALR"), executed, acknowledged and delivered by Borrower, as assignor, to Original Lender, as assignee, which was dated as of April 12, 2017, and recorded in the Cuyahoga County Office of Fiscal Officer on April 12, 2017,

as document number 201704120568.

17. A true and correct copy of the original recorded ALR is attached as <u>Exhibit E</u> and is incorporated herein by reference.

18. Original Lender perfected the liens granted to it by Borrower in personal property (the "Personal Property") by filing a UCC Financing Statement with the Ohio Secretary of State on April 17, 2017, as Document Number OH00210314231, which financing statement was assigned to Plaintiff pursuant to a UCC Financing Statement Amendment filed on July 26, 2017, as Document Number 20172070238 (together, the "Financing Statements").

19. True and correct copies of the Financing Statements are attached as <u>Exhibit F</u> and are incorporated herein by reference.

20. The Note, the Loan Agreement, the Mortgage, the ALR, the Guaranty and all other documents that evidence or relate to the Loan are collectively referred to as the "Loan Documents."

21. By that certain: (a) Assignment of Open-End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of June 12, 2017, and recorded in the Cuyahoga County Office of Fiscal Officer on July 19, 2017, as document number 201707190042 (the "Mortgage Assignment"); and (b) Assignment of Assignment of Leases and Rents dated as of June 12, 2017, and recorded in the Cuyahoga County Office of Fiscal Officer on July 19, 2017, as document number 201707190043 (the "ALR Assignment"), Original Lender assigned to Plaintiff all of its right, title and interest in and to Loan Documents and the Hotel.

22. A true and correct copy of the original recorded Mortgage Assignment is attached as <u>Exhibit G</u> and is incorporated herein by reference.

23. A true and correct copy of the original recorded ALR Assignment is attached as <u>Exhibit H</u> and is incorporated herein by reference.

60642-0991/149973191.1

24. In addition, Original Lender delivered to Plaintiff an Allonge (the "Allonge") by which Original Lender endorsed and made the Note payable to Plaintiff.

25. A true and correct copy of the original Allonge is affixed to the original Note and attached as Exhibit A.

26. Accordingly, by virtue of the Allonge, the Mortgage Assignment, and the ALR Assignment, Plaintiff is the lawful holder of the Note, the Mortgage, and ALR, and the other Loan Documents, and is entitled to enforce and seek payment of the Note and the Loan.

28. By virtue of the Loan Documents, including the Mortgage and the ALR, Plaintiff holds valid, subsisting, properly perfected, first priority liens and security interests in and to the Hotel (including all Personal Property and all revenue generated from the Hotel), subject only to the lien on the affected real property of any unpaid real estate taxes and assessments.

**B.     Borrower's Failure to Pay Debt Service**

27. Pursuant to the Loan Documents, Borrower was required to make timely monthly payments of principal, interest and reserves.  *See* Ex. A [Note] at § 1; Ex. B [Loan Agreement] at § 2.2.

28. Beginning in March 2020, Borrower failed to make such timely monthly payments and thus Borrower is in material default under the Loan Documents.

29. Borrower's failure to make timely debt service payments was an "Event of Default" under the Loan Documents.  *See* Ex. B [Loan Agreement] at § 8.1(a).

**C.     Unauthorized Encumbrances**

   **1.     The Sterling Mechanic's Lien**

30. Prior to December 20, 2017, Borrower employed Endison Sterling d/b/a Sterling's Home Improvement ("Sterling") to provide services at the Hotel.

31. On December 20, 2017, Sterling recorded a notice of a mechanic's lien (the

"Sterling Lien") in the Cuyahoga County Office of Fiscal Officer as document number 201712200282 as a result of Borrower's failure to pay for Sterling's services.

32. A copy of Sterling's "Affidavit for Mechanic's Lien" is attached as <u>Exhibit I</u> and is incorporated herein by reference.

33. To date, Sterling continues to assert that it has not been paid and Borrower has not paid Sterling, challenged the Sterling Lien or otherwise addressed the Sterling Lien.

34. Plaintiff and its predecessor in interest did not consent to the Sterling Lien and had no knowledge of it until after Borrower's payment default on the Loan.

**2.    The CT Lien**

35. Prior to February 28, 2020, Borrower obtained financing from an undisclosed individual or entity.

36. On February 28, 2020, CT Corporation System ("CT") filed a UCC financing statement (the "CT Lien") with the Ohio Secretary of State as Document No. OH00237861180, asserting a lien on all of Borrower's assets on behalf of an undisclosed principal.

37. A true and correct copy of the CT financing statement is attached as <u>Exhibit J</u> and is incorporated herein by reference.

38. To date, neither CT nor Borrower have identified the undisclosed party on behalf of whom the financing statement was filed.

39. Plaintiff and its predecessor in interest did not consent to the CT Lien and had no knowledge of it until after Borrower's payment default on the Loan.

**3.    The SBA Lien**

40. Plaintiff is informed and believes that on or about July 10, 2020, Borrower obtained a $102,200 "EIDL" loan (the "SBA Loan") from the Small Business Administration (the "SBA").

41. The SBA has asserted the existence of the EIDL loan in Plaintiff's foreclosure proceeding relating to the Hotel that Plaintiff filed in the Court of Common Pleas, Cuyahoga County, Ohio.

42. Plaintiff is informed and believes that on or about July 10, 2020, Borrower executed a Promissory Note for the benefit of the SBA in the original amount of $102,200.00 (the "SBA Note") and a Security Agreement from for the benefit of the SBA (the "SBA Security Agreement").

43. A copy of the SBA Note is attached as Exhibit K and is incorporated herein by reference.

44. A copy of the SBA Security Agreement is attached as Exhibit L and is incorporated herein by reference.

45. On July 20, 2020, SBA filed a UCC financing statement with the Ohio Secretary of State as Document No. OH00243996476, asserting a lien (the "SBA Lien") on all assets of the Borrower relating to the SBA Loan (the "SBA Financing Statement").

46. A true and correct copy of the SBA Financing Statement is attached as Exhibit M and is incorporated herein by reference.

47. Plaintiff and its predecessor in interest did not consent to the SBA Loan or SBA Lien and had no knowledge of it until August 2020.

48. Under the Loan Documents, Borrower was required to obtain the written approval of Plaintiff or its predecessor in interest prior to incurring additional indebtedness or permitting any liens other than Plaintiff's liens to encumber the Hotel. *See* Ex. B [Loan Agreement] at §§ 5.16, pp. 6, 8-9, 11.

49. The Sterling Lien, CT Lien and SBA Lien constitute "Events of Default" under the

Loan Documents. *See* Ex. B [Loan Agreement] at §§ 8.1(d), 5.16, pp. 6, 8-9, 11.

### D.      Unauthorized Transfer of Borrower's LLC Membership Interests

50.      On or about September 2020, the owners of 100% of Borrower's LLC membership interests (collectively, the "Transferor") transferred all of their membership interests to an unrelated entity, DATD Holdings, LLC ("Transferee"), which is owned by individuals unrelated to Transferor (the "LLC Transfer").

51.      A copy of an agreement documenting the LLC Transfer is attached as <u>Exhibit N</u> and is incorporated herein by reference.

52.      Neither Plaintiff nor its predecessor in interest have consented to the LLC Transfer and they had no knowledge of it until October 23, 2020.

53.      Under the Loan Documents, if no preexisting Event of Default had occurred, Borrower was prohibited from transferring more than 49% of its LLC membership interests. Under the Loan Documents, if there was a preexisting Event of Default, Borrower was prohibited from transferring any of its LLC membership interests. *See* Ex. B. [Loan Agreement] at § 5.16, pp. 8-9.

54.      Borrower gave no notice to Plaintiff or its predecessor in interest, or to the Hotel's franchisor prior to the LLC Transfer.

55.      The LLC Transfer is impermissible under the Hotel's franchise agreement without the prior notice and approval of the franchisor, the execution of a new franchise agreement and a new guaranty of the new franchise agreement, none of which occurred.

56.      The Hotel's franchisor has not consented to the LLC Transfer.

57.      The LLC Transfer constitutes an "Event of Default" under the Loan Documents. *See* Ex. B [Loan Agreement] at §§ 8.1(d), § 5.16, pp. 8-9.

**E.     Notices of Loan Default, Acceleration and Foreclosure**

58.     On June 12, 2020, Plaintiff sent Borrower a letter notifying it that the Loan was in default, copying Defendants.

59.     A true and correct copy of the original June 12 letter is attached as <u>Exhibit O</u> and is incorporated herein by reference.

60.     On August 12, 2020, Plaintiff sent Borrower a letter notifying it that the Loan had been accelerated and demanding payment.

61.     A true and correct copy of the original August 12 letter is attached as <u>Exhibit P</u> and is incorporated herein by reference.

62.     On September 9, 2020, Plaintiff commenced a judicial foreclosure action to foreclose on its interests in the Hotel in the Court of Common Pleas, Cuyahoga County, Ohio.

63.     On October 27, 2020, Plaintiff sent Defendants a letter notifying them that Events of Default had occurred under the Guaranty, that they were personally liable for the unpaid Loan balance, and demanding payment.

64.     A true and correct copy of the original October 27 letter is attached as <u>Exhibit Q</u> and is incorporated herein by reference.

65.     To date, Defendants have not paid any amounts to Plaintiff.

66.     As of September 5, 2020, the following amounts were due and owing to Plaintiff on the Loan, in addition to Plaintiff's attorneys' fees and costs:

|  |  |
|---|---|
| Principal | $5,298,790.14 |
| Note rate interest | $152,293.41 |
| Default rate interest | $135,589.65 |
| Late fees | $16,491.05 |
| Non-legal fees incurred by Special Servicer in administering the Loan | $3,759.72 |
| Property protection advances | $13,846.37 |

| | |
|---:|---:|
| Yield Maintenance | $1,768,197.73 |
| **Subtotal** | **$7,388,968.07** |
| Suspense Account Balance | ($15,695.56) |
| Tax Escrow Balance | ($11,842.38) |
| Insurance Escrow Balance | ($20,506.18) |
| Reserve Balance | ($223,805.77) |
| **Total** | **$7,117,118.18** |

67. Non default interest continues to accrue on the Loan from and after September 5, 2020 at a rate of 5.654% per annum, which is $832.20 per diem. In addition, default interest continues to accrue on the Loan from and after September 5, 2020 at a rate of 5% per annum, which is $735.94 per diem. The total interest on the Loan from and after September 5, 2020 is accruing a rate of 10.654% per annum, which is $1,568.14 per diem.

68. In addition, the following amounts are also due and owing on the Loan under the Loan Documents: (a) all of Plaintiff's attorneys' fees and costs that have been incurred and will be incurred in connection with this matter, both before and after the entry of any order or judgment, (b) all late charges, whether or not such late charges have been assessed as of the date of this Complaint, (c) all interest at both the non-default and default rates, with default interest commencing as of the date of the first default, whether or not default interest has begun to accrue, and (d) all other charges, costs, and fees available to Plaintiff under the Loan Documents and applicable law.

E. **Events of Default under the Guaranty**

69. Under Section 1(b) of the Guaranty, Defendants agreed to be personally liable to Original Lender and its successors and assigns for, "from and after the date that any Springing Recourse Event occurs, payment of all the Debt and (iii) the Debt Service Obligations." Ex. C [Guaranty] at § 1(b).

70. "Debt" is defined on page 3 of the Loan Agreement as "the unpaid Principal, all interest accrued and unpaid thereon, any Yield Maintenance Premium and all other sums due to Lender in respect of the Loan or under any Loan Document." Ex. B [Loan Agreement] at p. 3.

71. "Springing Recourse Event" is defined under Section 10.1 of the Loan Agreement as including when "an Event of Default described in Section 8.l(d) shall have occurred." Ex. B [Loan Agreement] at § 10.1.

72. Section 8.1(d) of the Loan Agreement states that it is an Event of Default if "a Transfer other than a Permitted Transfer occurs." Ex. B [Loan Agreement] at § 8.1(d).

73. Section 5.16 of the Loan Agreement states that "Borrower shall not directly or indirectly make, suffer or permit the occurrence of any Transfer other than a Permitted Transfer."

74. A "Transfer" is defined on page 11 of the Loan Agreement as "any sale, conveyance, transfer, lease or assignment, Lien, or the entry into any agreement to sell, convey, transfer, lease or assign, whether by law or otherwise, including forfeiture, of, on, in or affecting (i) all or part of the Property (including any legal or beneficial direct or indirect interest therein), (ii) any direct or indirect interest in Borrower (including any profit interest), or (iii) the direct or indirect right or power to direct or cause the direction of the management and policies of Borrower, through the ownership of voting securities, by contract or otherwise." Ex. B [Loan Agreement] at p. 11.

75. In defining "Permitted Transfers" on pages 8-9, the Loan Agreement states:

> ". . . provided that no Event of Default shall then exist, a Transfer of an interest in Borrower to any Person, provided that (A) such Transfer shall not (x) cause the transferee (together with its Affiliates) to acquire Control of Borrower (if such transferee (together with its Affiliates) does not have Control of Borrower as of the date hereof) or (y) result in Key Principal(s) no longer possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of Borrower through the ownership of voting securities, by contract or otherwise, (B) after giving

11

> effect to such Transfer, Key Principal(s) shall collectively continue to own at least 51% of all equity interests (direct or indirect) in Borrower
>
> * * *
>
> Notwithstanding the foregoing, any Permitted Transfer must be expressly permitted under the Franchise Agreement, and/or Borrower shall have obtained any consents required from Franchisor in connection with such Permitted Transfer, otherwise such Permitted Transfer shall not be allowed under this Agreement."

76. Page 3 of the Loan Agreement defines "Control" as "with respect to any Person, either (i) ownership, directly or indirectly, of forty-nine percent (49%) or more of all equity interests in such Person or (ii) the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, through the ownership of voting securities, by contract or otherwise." Ex. B [Loan Agreement] at p. 3.

77. Page 9 of the Loan Agreement defines "Person" as "any individual, corporation, partnership, limited liability company, joint venture, estate, trust, unincorporated association, any other person or entity, and any federal, state, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing." Ex. B [Loan Agreement] at p. 9.

78. Page 6 of the Loan Agreement defines a "Lien" as "any mortgage, deed of trust, lien (statutory or otherwise), pledge, hypothecation, easement, restrictive covenant, preference, assignment, security interest or any other encumbrance, charge or transfer of, or any agreement to enter into or create any of the foregoing, on or affecting all or any part of the Property or any interest therein, or any direct or indirect interest in Borrower, including any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing, the filing of any financing statement, and mechanic's, materialmen's and other similar liens and encumbrances." Ex. B [Loan Agreement] at p. 6.

60642-0991/149973191.1

79. Borrower failed to obtain the prior written consent of Plaintiff or its predecessor in interest to the Sterling Lien, the CT Lien and the SBA Lien, and Plaintiff does not consent to the same.

80. The existence of any of the Sterling Lien, the CT Lien or the SBA Lien are impermissible Transfers under the Loan Documents, constitute Springing Recourse Events and cause Defendants to be liable for the full, accelerated Loan debt.

81. Borrower failed to obtain prior written consent of Plaintiff or its predecessor in interest to the LLC Transfer, which transfer occurred after an Event of Default.

82. The LLC Transfer is an impermissible Transfer under the Loan Documents, constitutes a Springing Recourse Event and causes Defendants to be liable for the full, accelerated Loan debt.

83. "Springing Recourse Event" is also defined under Section 10.1 of the Loan Agreement as including a breach of the covenant set forth in Section 5.12." Ex. B [Loan Agreement] at § 10.1.

84. Section 5.12 of the Loan Agreement states that "Borrower shall at all times be a Special Purpose Entity." Ex. B [Loan Agreement] at § 5.12.

85. Schedule 4 of the Loan Agreement defines a "Special Purpose Entity" as an entity that "if such entity owns the Property, has and will have no indebtedness other than the Permitted Indebtedness or any prior financing that has been fully paid and discharged in full on or prior to the date hereof." Ex. B [Loan Agreement] at Sch. 4(xxi)(a).

86. Schedule 4 of the Loan Agreement also defines a "Special Purpose Entity" as an entity that "except in connection with the Loan, has not pledged and will not pledge its assets for the benefit of any other Person."

87. The Sterling Lien, the CT Lien, the SBA Loan and the SBA Lien violate the Special

13

Purpose Entity covenants under the Loan Documents, constitute Springing Recourse Events, and cause Defendants to be liable for the full, accelerated Loan debt.

88.     Accordingly, Defendants are liable for the full accelerated debt due on the Loan.

## I.     The Court Should Enforce the Guaranty

89.     Borrower entered into valid and enforceable contracts when it executed the Loan Documents.

90.     Defendants entered into a valid and enforceable contract when they executed the Guaranty.

91.     Plaintiff and its predecessors in interest have fully performed and fulfilled all of the terms and conditions of the Guaranty and the other Loan Documents that they agreed to perform and fulfill.

92.     Defendants have failed to perform their obligations under the Guaranty by failing to pay Plaintiff all principal, interest and other amounts due under the Loan.

93.     Plaintiff has been damaged and continues to be damaged by Defendants' breach of the Guaranty.

94.     The Guaranty is a "guaranty of payment and performance and not merely a guaranty of collection." Ex. C [Guaranty] at § 5(a).

95.     Pursuant to Section 5(h) of the Guaranty, "At the option of Lender, Guarantor may be joined in any action or proceeding commenced by Lender against Borrower in connection with or based upon any other Loan Documents and recovery may be had against Guarantor in such action or proceeding or in any independent action or proceeding against Guarantor to the extent of Guarantor's liability hereunder, without any requirement that Lender first assert, prosecute or exhaust any remedy or claim against Borrower or any other Person, or any security for the obligations of Borrower or any other Person." Ex. C [Guaranty] at § 5(h).

96. Pursuant to Section 5(k) of the Guaranty, "Guarantor's obligations hereunder shall survive a foreclosure, deed-in-lieu of foreclosure or similar proceeding involving the Property and the exercise by Lender of any of all of its remedies pursuant to the Loan Documents." Ex. C [Guaranty] at § 5(h).

97. Plaintiff has been compelled to employ and retain attorneys to represent and advise Plaintiff in connection with this action and Plaintiff's enforcement of its rights under the Loan Documents. Plaintiff will thereby become liable for the usual, reasonable and customary fees of its attorneys.

98. The Guaranty provides for payment of its attorneys' fees, costs and expenses incurred in Plaintiff's enforcement of its rights under the Guaranty and the Loan Documents. *See* Ex. C [Guaranty] at § 16(b).

WHEREFORE, Plaintiff prays that judgment be entered in its favor and against Defendants, jointly and severally, as follows:

(A) A judgment in favor of Plaintiff and against Defendants on Plaintiff's claim for breach of the Guaranty in an amount to be determined at trial;

(B) A judgment in favor of Plaintiff and against Defendants for Plaintiff's reasonable attorneys' fees and litigation expenses; and

(C) Such other and further relief as the Court deems just and reasonable.

Dated: November 4, 2020                                              Respectfully Submitted,

*/s/ John R. Hardin*
John R. Hardin
Texas State Bar No. 24012784
Perkins Coie LLP
500 N. Akard Street, Ste. 3300
Dallas, TX 75201
Telephone:  214.965.7743
Facsimile:  214.965.7793
JohnHardin@perkinscoie.com

*Attorneys for Plaintiff*